Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720

*Attorney for Plaintiff Janine Evans*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Janine Evans,<br><br>          Plaintiff,<br><br>     v.<br><br>Unum Life Insurance Company of America; One Source Employer Services, One Source Employer Services Employee Disability Plan,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Janine Evans (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3      2.      Plaintiff is a resident of Maricopa County, Arizona.

4      3.      Upon information and belief, Defendant One Source Employer Services (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Unum Life Insurance Company of America (hereinafter referred to as "Unum"). The specific Unum policy is known as 5894483 001. The Company's purpose in subscribing to the Unum policy was to provide disability insurance for its employees. Upon information and belief, the Unum policy may have been included in and part of the One Source Employer Services Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Unum. Plaintiff believes that as it relates to her claim, Unum functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.      Upon information and belief, Plaintiff believes Unum operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Unum's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6. The Company, Plan and Unum conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as an Office Manager on or about March 20, 2004. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for and received long term disability benefits. The relevant Unum policy provides the following definition of a covered disability and applies to Plaintiff's claim:

> You are disabled when Unum determines that:
>
> -you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> -you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of

any gainful occupation for which you are reasonably fitted by education, training or experience.

11. The relevant Unum policy further provides:

Disabilities, due to a sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness, alcoholism or drug abuse have a limited pay period up to 12 months.

12. In a letter dated July 25, 2005, Unum notified Plaintiff it needed to update her claim with regard to her ability to obtain continued disability payments. Unum continued to pay Plaintiff long term disability benefits throughout its review of her claim.

13. As part of its review, Unum obtained a vocational rehabilitation occupational report of Plaintiff's occupation and an opinion from a Designated Medical Officer who was a Unum employee that did not examine Plaintiff.

14. Plaintiff also underwent an independent medical examination at Unum's request performed by Francis A. Nardella, M.D. In his February 14, 2007 report, Dr. Nardella confirmed the diagnosis of Plaintiff's serious medical conditions and that she has received "appropriate and regular care for her medical conditions." Dr. Nardella further indicated there were objective medical findings supporting Plaintiff's serious medical conditions and he determined that at best, Plaintiff could only "probably work part-time, four to six hours per day at a sedentary job if the job involved minimal physical and/or emotional stress…[with] frequent absenteeism…"

15. In response to Dr. Nardella's report, Unum obtained a review of Plaintiff's medical records in July 2007, which included Dr. Nardella's opinions, from one of its own employees who did not examine Plaintiff. Unum's employee disagreed and did not concur with Dr. Nardella's medical opinion that Plaintiff could only "probably" work part-time with little stress and frequent absenteeism.

-4-

16. Plaintiff questions the credentials, independence, impartiality and bias of Unum's own employee in reviewing her claim and/or in rendering opinions regarding the job duties she is able to perform. Plaintiff believes Unum's employee's opinion is adversarial to her claim due to this individual's conflict of interest as a result of being employed by Unum. Plaintiff believes Unum's structural financial conflict of interest is a motivating factor in why it relied on own employees' opinion.

17. Unum's employee did not examine Plaintiff and his/her opinion that Plaintiff's medical evidence did not support a finding that Plaintiff was unable to work in any occupation was based entirely on a selective review of Plaintiff's medical records and of her treating medical professionals' opinions that she was unable to engage in any gainful employment; the opinion also ignored the findings of its own independent medical examiner that Plaintiff's medical conditions were supported by objective medical evidence and de-emphasized evidence submitted by Plaintiff which proved she was disabled in order to justify a denial of her claim.

18. In December 2007, Unum obtained another review of Plaintiff's medical records, again from its own employee, Kent Crossley, M.D. Dr. Crossley's December 28, 2007 report noted Unum obtained a March 2007 review of Plaintiff's claim from another of Unum's employees, specifically, Debra Kile, M.D., who reviewed Plaintiff's records and Dr. Nardella's independent medical report. Dr. Crossley noted Dr. Kile's report "supported" Dr. Nardella's "recommendation Plaintiff should be limited to part-time work." Dr. Crossley also concluded Plaintiff was limited to "6 hours work/day" for at least 2-3 months and recommended a re-evaluation of Plaintiff's serious medical conditions after that time. Dr. Crossley expressly noted it was his opinion Plaintiff was limited to part-time work

1  based on the independent medical examination and not based on Plaintiff's self-reporting of symptoms.

19. In support of her claim, Plaintiff submitted to Unum a January 8, 2008 statement from one of her treating physicians who opined she was unable to return to work.

20. At Unum's request, Plaintiff underwent a second independent medical examination again performed by Dr. Nardella. In his September 11, 2008 report, Dr. Nardella again confirmed Plaintiff diagnosis and he acknowledged she had received "appropriate and regular care for her medical conditions." Dr. Nardella further noted the medications prescribed for Plaintiff were "appropriate" and concluded, "[i]t is unlikely that any specific medications would significantly alter her level of functioning at this time." Dr. Nardella also confirmed objective medical findings supported Plaintiff's serious medical conditions and he again affirmed his opinion Plaintiff could at best, only "probably work part-time, four to six hours per day at a sedentary job if the job involved minimal physical and/or emotional stress…[with] frequent absenteeism…" Dr. Nardella concluded he could offer "no recommendations for further treatment that was likely to enhance [Plaintiff's] level of functioning" and he had "no recommendations for any further diagnostic testing that would provide a better understanding of [Plaintiff's] condition."

21. Despite the repeated findings from Plaintiff's treating physicians, its own employees and two (2) independent medical examinations that Plaintiff was unable to engage in full-time employment or any employment without frequent absenteeism and that her serious medical conditions were supported by objective medical findings; Unum notified Plaintiff in a letter dated February 12, 2009 it was terminating her long term disability benefits. In its termination letter, Unum stated it had paid Plaintiff long term

disability benefits since February 14, 2007 based solely on her self-reported conditions and its policy limited payment of benefits for a period of twelve (12) months. Unum informed Plaintiff her long term benefits would be terminated as of February 13, 2009 and also stated because it failed to notify Plaintiff of the self-reported limitation it would provide an additional three (3) months of benefits. Unum's denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it completely failed to reference, consider and/or selectively reviewed most if not all Plaintiff's evidence, including the evidence Unum obtained in her claim.

22.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the February 12, 2009 denial of her claim for long term disability benefits in a letter dated August 5, 2009. In support of her appeal, Plaintiff submitted additional medical information to Unum demonstrating her total disability as defined in the Unum policy.

23.     In support of her appeal, Plaintiff submitted to Unum a May 1, 2009 Functional Capacity Evaluation report prepared by a qualified physical therapist which concluded that "[b]ased on a reasonable degree of medical certainly…[Plaintiff] would not be able to perform ***sedentary work*** consistently on a regular, full-time basis." (original emphasis). Plaintiff further submitted a September 18, 2009 narrative letter from a treating physician who opined she is "incapable of any sustained gainful employment" based on "a reasonable degree of medical certainty." Plaintiff also submitted an October 7, 2009 Addendum to the Functional Capacity Evaluation, which disagreed with Dr. Nardella's conclusion that Plaintiff could "probably" work part-time and concluded "[b]ased on the patient's Functional Capacity Evaluations, review of records and my examination, I do not believe that the patient is capable of work in any capacity at this time."

24.     In further support of her claim, Plaintiff submitted a sworn Affidavit from her husband documenting her limitations and inability to work full time in any occupation.

25.     Plaintiff also submitted an October 12, 2009 Vocational Report where the expert concluded Plaintiff "is unable to perform any competitive job that exists in the local or national economy.  She has been unable to perform any type of work since March 8, 2004."

26.     Notwithstanding Plaintiff's reliable evidence, Unum notified Plaintiff in a letter dated November 5, 2009 it was upholding its decision to deny her long term disability benefits based on the twelve (12) month limitation coverage for self-reported symptoms. In denying Plaintiff's appeal of the denial of her long term disability benefits, Unum relied on an alleged medical consulting physician.  Upon information or belief, this medical consultant is either an employee of Unum or may be repeatedly retained by Unum and/or other similar insurance industry related entities to perform the type of services he/she provided in Plaintiff's claim and as a result this individual has a conflict of interest in that he/she may have an incentive to protect his/her own consulting relationships with the aforementioned industry by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide report(s) which are favorable to the insurance companies such as Unum and which supported the denial of Plaintiff's claim.  Plaintiff questions the credentials, independence, impartiality and bias of Unum's own employee to fully and fairly review her claim and believes any opinion rendered by its own employee is adversarial because of the individual's conflict of interest as an employee.

27.     Unum's consultant's opinion was based entirely on a selective, flawed and incomplete review of Plaintiff's medical records which erroneously failed to consider the

combined impact of Plaintiff's serious medical conditions, the objective medical evidence supporting Plaintiff's total disability and the opinions of her treating physicians that she was totally disabled and unable to work. Plaintiff believes the consultant's conflict of interest led to his biased review and Unum's' conflict of interest led it to rely on the consultant's report to deny Plaintiff's claim.

28. Unum's November 5, 2009 denial again failed to provide Plaintiff with a full and fair review by failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it again completely failed to reference, consider and/or selectively reviewed most if not all of Plaintiff's evidence which adequately documented her serious medical conditions demonstrating that she meet the relevant definition of total disability based on objective medical evidence and not merely self-reported findings

29. Unum has often been criticized by federal courts for the manner in which it selectively reviews claims and terminates them when it is in the company's best interest. The $26,394,765.39 dollar verdict and well as the Court's findings of fact as rendered in *Merrick v. Paul Revere Life Ins*. 594 F.Supp.2nd 1168 (D. Nev. 2008)(Attached hereto as Exhibit "A" is a copy of the decision), provides ample evidence of Unum's conflicts of interest and the self serving manner in which it manages, evaluates and denies disability claims   Plaintiff believes discovery is necessary in this litigation for the Court to fully understand Unum's and any individual's conflict of interest who was involved in the review of her claim and how those conflicts either alone or in combination resulted in the denial of her claim.

30. Plaintiff has exhausted all of her administrative appeals.

31. Plaintiff believes a reason Unum terminated her claim for long term disability benefits is due to its aforementioned structural financial conflict of interest in that it was the sole decision maker with regard to whether Plaintiff was disabled pursuant to the policy and the payor of benefits if it approved Plaintiff's claim.

32. In evaluating Plaintiff's claim on appeal, Unum had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do.[1]

34. Plaintiff believes the reason Unum provided an unlawful review which was neither full or fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is a reason her disability claim was denied.

35. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Unum and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Unum's decision to deny her claim.

36. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by Unum as referenced herein are flagrant.

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1   37. As a direct result of Unum's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

38. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

39. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits as a result of being found disabled pursuant to the relevant policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to from the Plan and/or the Company as a result of being found disabled;

B. For an order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the Plan or policy conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

        DATED this 18th day of February, 2010.

        SCOTT E. DAVIS. P.C.

        By: */s/ Scott E. Davis*
            Scott E. Davis
            Attorney for Plaintiff